. [No. 13655.  Department Two.  April 3, 1917.]

WILLIAM STRAFFORD et al., Appellants, v. NORTHERN PACIFIC RAILWAY COMPANY et al., Respondents.[1]

WITNESSES—CONFIDENTIAL COMMUNICATIONS—PHYSICIANS—EXAMINATIONS.  Under Rem. Code, § 1214, which provides that a physician or surgeon shall not be examined in a civil action as to information acquired in attending a patient to enable him to prescribe or act for the patient, a physician may describe the nature and extent of the examination he made while the patient was under his care, if he does not state the result of the examination; and he may also testify as to subsequent examinations made for the purpose of enabling him to testify and not as the patient's physician or for the purpose of treatment.

SAME—CROSS-EXAMINATION—REDIRECT—SCOPE.  Where part of a conversation is elicited on cross-examination, redirect may go into the whole conversation.

APPEAL—REVIEW — HARMLESS ERROR — ARGUMENT.  Where, upon objection to the argument to the jury as improper, counsel withdraws his statement and requested the jury not to consider it, the error if any was harmless.

SAME—HARMLESS ERROR—INSTRUCTIONS—CURE BY VERDICT.  Upon appeal by plaintiff from an award in his favor for personal injuries, error in instructions to the jury not affecting the amount of the recovery is without prejudice.

Appeal by plaintiffs from a judgment of the superior court for Pierce county, Clifford, J., entered March 11, 1916, upon the verdict of a jury rendered in favor of the plaintiffs, as

[1]Reported in 164 Pac. 71.

against certain defendants, in an action for personal injuries sustained by a passenger in a train wreck.  Affirmed.

*Govnor Teats, Leo Teats,* and *Ralph Teats,* for appellants.

*Geo. T. Reid, J. W. Quick, L. B. da Ponte,* and *Geo. W. Korte,* for respondents.

PER CURIAM.—Annie Strafford, the wife of the other plaintiff, William Strafford, while a passenger upon a train of the Chicago, Milwaukee & St. Paul Railroad Company, was injured through the collapse of a trestle on the railway line over which a train of that company was passing.  The trestle, which was built above the intersecting line of the Northern Pacific Railway, had been weakened by the projecting boom of a crane carried as freight on a train of the latter railway company.  The boom had swept against the supports on one side of the trestle and broken and shattered them so as to render the trestle insufficient to support the weight of a train.  Some eight or ten minutes after the happening of this incident, a passenger train of the Chicago, Milwaukee & St. Paul railroad approached the trestle; and, either not heeding or not seeing a brakeman of the Northern Pacific railway who was attempting to flag it, passed onto the trestle, which immediately gave way under the weight of the train. Mrs. Strafford was a passenger in the day coach of the passenger train, which was crushed when precipitated to the ground below.  She was thrown face downward, and was struck by some object falling or pressing upon the pelvic region of her back, inflicting internal injuries from which she suffered considerable pain and ensuing weakness.  She was transported by the Chicago, Milwaukee & St. Paul road to the Tacoma General Hospital, where she was attended by the company's physicians, Doctors Willard and Shafer. After being treated at the hospital for three weeks and two days, she was cared for by her sister in South Tacoma for about five months, when she was removed to her home on a farm near McKenna.  Mrs. Strafford and her husband

brought an action for the recovery of damages for personal injuries, joining as defendants both of the railroad companies and Jacob Heether, conductor on the Northern Pacific freight train which had caused the injury that weakened the Milwaukee trestle. A general verdict was returned, finding in favor of the Chicago, Milwaukee & St. Paul Railroad Company and finding against the Northern Pacific Railway Company and Jacob Heether, fixing the amount of the recovery against the last named defendants in the sum of $1,650. From the judgment thereon, plaintiffs appeal, assigning numerous errors which it was claimed were prejudicial because tending to influence the jury to reduce the amount of their award.

The first contention of the appellants is that there was error in permitting Doctors Willard and Shafer, who were respondents' physicians furnished by them to care for Mrs. Strafford, to testify to what they learned respecting the nature of her injuries. The objection is founded on the statute (Rem. Code, § 1214) which provides:

"A regular physician or surgeon shall not, without the consent of his patient, be examined in a civil action as to any information acquired in attending such patient, which was necessary to enable him to prescribe or act for the patient."

A careful examination of the record, however, at the places pointed out by the appellants, does not disclose that the doctors were asked or permitted to testify as to any information acquired by them while attending the appellant as her physicians or surgeons. Dr. Willard was asked to describe, and did describe, the nature and extent of the examination he made while the appellant was a patient in the hospital under his care, but was expressly warned by counsel not to state what he found as the result of his examination, and heeded the admonition. After he had answered counsel's question, he was asked and stated that he had made two subsequent examinations of the appellant, not as her physician or surgeon or for the purpose of treating her, but

for the purpose of enabling him to testify as to her condition. As to discoveries made at these examinations, he was permitted to testify fully. Clearly this was not error. As to these examinations, he was as competent to testify as any other physician or surgeon would be under the same circumstances; the fact that he had previously treated her did not preclude him from testifying to matters he had subsequently learned as to her condition under circumstances not precluding his right to testify. In order to render a physician incompetent, the information which he is called upon to disclose must have been acquired while he was attending the patient in a professional capacity for the purpose of treating her ailments; there is no privilege when the examination is made by the physician for the express purpose of publishing the results—such, for example, as testifying in an action for personal injuries. There was, therefore, no error committed in the admission of the doctor's testimony.

The same is true of the testimony of Dr. Shafer. While he had formerly treated the appellant in a professional capacity, he testified to no condition the knowledge of which was acquired by him while so treating her. He also subsequently examined her under circumstances similar to those related of Dr. Willard, and testified to conditions learned at such examination. The statutory rule was not violated in permitting him so to do. *State v. Winnett*, 48 Wash. 93, 92 Pac. 904.

A contention is also made in this connection that the court erred in overruling objections to the redirect examination of Dr. Willard as to the conversations between him and Mr. Teats, of counsel for appellants. But the record discloses that appellants had elicited a part of the conversation on cross-examination, and that respondents, on redirect examination, merely went into the whole of the conversation. This they were entitled to do.

The next contention is that the court erred in not sustaining an objection to the argument of respondents' counsel

questioning the right of appellants to object to Doctors Willard and Shafer testifying in the case, and in refusing to instruct the jury to disregard it. The following appears in the record:

"Mr. Quick [arguing to the jury]: Mr. Teats criticizes us because we stated that we would show that Mrs. Strafford got up on the third day, but that we did not prove it. We expected to show that the plaintiff sat up in bed on the third day, but we did not, and you know why we did not, and at whose instance we were not allowed to introduce the evidence. Why were not Dr. Willard and Dr. Shafer permitted to testify—(interrupted). Mr. Teats: We object to that line of argument. In the first place, Dr. Shafer did testify, and in the next place, under the statute he is absolutely precluded from making such argument. The Court: I am not certain that the decision goes that far. The plaintiff may have an exception. Proceed. Mr. Quick: If counsel objects, I will withdraw that statement and ask the jury not to consider it."

We think the error, if any, was harmless, in view of the action of counsel in withdrawing his statement and asking the jury not to consider it. It was an admission that counsel was possibly overstepping the limits of proper argument, as potent and emphatic as would have been an admonition of the court that it be disregarded.

The last contention of appellants is that the court erred in giving certain instructions, six in number, and in refusing to give ten instructions requested by them. Conceding that there may have been error in the giving or refusing of any of these instructions, the error was without prejudice, inasmuch as they related to the liability of the respondents Northern Pacific Railway Company and Jacob Heether and the verdict was against these defendants. None of them bore upon the amount of the recovery. In the case of *Peterson v. Wadley & Mt. V. R. Co.*, 117 Ga. 390, 43 S. E. 713, it was held:

"Where, in a suit against a railway company for damages, the jury returns a verdict in favor of the plaintiff, he

cannot justly complain of an erroneous charge touching his right to recover, nor of any other error which did not operate to his prejudice." (Syllabus.)

See, also, *Sears' Adm'r v. Louisville & N. R. Co.*, 22 Ky: Law 152, 56 S. W. 725; *Aris v. Mutual Life Ins. Co.*, 54 Wash. 269, 695, 103 Pac. 50, 53.

Finding no errors in the rulings of the trial court of which appellants can justly complain, the judgment herein is affirmed.