[No. 53235–4. En Banc. July 9, 1987.]

NORTH AMERICAN COUNCIL ON ADOPTABLE CHILDREN, *Appellant,* v. THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, ET AL, *Respondents.*

*Scott C. Neilson,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Rochelle E. Wienker* and *David R. Minikel, Assistants,* for respondents.

ANDERSEN, J.—

## FACTS OF CASE

At issue is whether appellant's motions to be appointed guardian ad litem were properly denied. We conclude that

they were and affirm.

The North American Council on Adoptable Children (NACAC) is a nonprofit corporation headquartered in Washington, D.C. Organized in 1974, NACAC states that it focuses on the right of foster children to a permanent home. It further states that it is concerned about "special needs" children, or adoptable children of school age who are handicapped, of mixed or minority races, or who are part of a sibling group.

This appeal concerns two actions brought by NACAC on behalf of adoptable children in Pierce and Thurston Counties.

### The Pierce County Action

On October 30, 1984, NACAC appeared ex parte before the Pierce County Superior Court and presented the court with a motion for appointment as guardian ad litem, a supporting affidavit, and a summons and complaint. Named as plaintiffs in the complaint were John and Jane Does 1–87, who were described therein as minors eligible for adoption in DSHS Region 5 (primarily Pierce County). The defendants included the Department of Social and Health Services of the State of Washington (DSHS), the director of the Bureau of Children's Services, the Governor, and other state employees.

The complaint alleged that the defendants had failed to provide needed social services to effectuate the goal of adoption for these children. Some of the alleged "acts or omissions" included inadequate staffing of foster care or adoption workers, inadequate training and recruitment of foster care or adoption workers, and inadequate use of adoption subsidies. NACAC's complaint alleged several causes of action, including racial discrimination, discrimination based on handicap, breach of contract, breach of fiduciary duty, civil rights violations, intentional infliction of emotional distress, negligence and outrage.

In its motion for appointment as guardian ad litem, NACAC stated that according to a DSHS report compiled

in 1984, there were fewer than 87 children in Region 5 who were eligible for adoption. NACAC further stated that these children were wards of DSHS whose biological parental rights had been terminated, that they were children without families, that they were predominantly minority children and/or children with developmental disabilities, and that they were incompetent due to their tender years.

NACAC stated that it sought appointment as guardian ad litem to sue on the children's behalf. It acknowledged that DSHS could not disclose the children's case files until NACAC was appointed as their guardian ad litem, and added:

> If the Order establishing guardianship is entered, Petitioner intends to review the files to determine the actual number of children who have this cause of action, whether it is in the form of, inter alia, a mandamus, injunction, habeas corpus, damage, or civil rights claim.

NACAC also requested the court to waive any notice requirement for a hearing on its motion because the minors were less than 14 years old. The motion was supported by an affidavit from NACAC's executive director. The affidavit described NACAC's claimed abilities to speak on behalf of children in foster care.

The trial judge signed the order appointing NACAC guardian ad litem for Pierce County children identified in the 1984 report. The defendants subsequently appeared in the action and filed a motion to set aside the order on the grounds that (1) no notice was given to the parties entitled thereto; (2) the motion's material allegations were wholly unsupported by affidavit and contained material misstatements of fact; and (3) NACAC was without authority to obtain the order. Accompanying the defense motion was an affidavit. It stated that of the 26 children legally free for adoption in Region 5, only 23 were Pierce County cases. Of those 23, 6 were minorities and 7 were handicapped. Of the 26, 1 was over age 14, and all 26 already had guardians ad litem.

Following a hearing on defendants' motion, the trial

court vacated NACAC's appointment as guardian ad litem. NACAC then filed a new motion for an order appointing it guardian ad litem, and on the same day filed and noted for hearing a motion for right to discovery. This motion stated that it was for the purpose of "litigating who the appropriate Guardian ad litem is pursuant to RCW 4.08.050." The court granted defendants' motion to dismiss NACAC's complaint without expressly referring to NACAC's two new motions. The trial court subsequently denied NACAC's motion for reconsideration.

## The Thurston County Action

A similar sequence of events occurred in Thurston County. NACAC filed the same complaint, but this time identified the plaintiffs as John and Jane Does 1–35, or minors eligible for adoption in Region 6. NACAC again stated that if the order were granted, it intended to review the files to determine the "actual number of children who have this cause of action".

A court commissioner granted NACAC's motion for appointment as guardian ad litem in the Thurston County suit, whereupon defendants filed a motion to vacate the order. The motion to vacate was denied, but the court suspended the order appointing NACAC as guardian ad litem pending a hearing. The court further ordered that notice of the hearing be sent to the guardians ad litem of the children named as plaintiffs. Any of those children who were 14 and did not have a guardian were to be personally served with notice.

The defendants then moved for reconsideration of the court's denial of their motion to vacate NACAC's appointment as guardian ad litem. Accompanying the motion was an affidavit describing the status of the 55 adoptable children in Thurston County. Of the 55, 20 had had adoptions finalized; 2 were in adoptive placements awaiting finalization; 4 were in prospective adoptive placements, already had guardians ad litem and were not legally free; 3 had guardianships established and their guardians ad litem ter-

minated; 24 were in foster care with guardians ad litem appointed; and 2 were in foster care with no guardians ad litem but were over age 14. Of the 55, 11 were over age 14, 7 were racial minorities, and 9 were eligible for developmental disabilities services.

On March 5, 1985, the court denied the defense motion for reconsideration in Thurston County and ordered NACAC to proceed with notifying the parties involved of the pending court action. Several documents pertaining to the litigation were served on adoptive parents, guardians ad litem, or guardians. Each child in question was assigned a number for confidentiality. Prior to the hearing, representatives of 4 children noted their objections to NACAC's proposed appointment. At the hearing, an additional 10 representatives appeared and opposed the inclusion of their children in the lawsuit. At the end of the hearing, the trial court denied NACAC's motion for appointment as guardian ad litem. The court also denied NACAC's motion for reconsideration and granted the defendants' motion to dismiss NACAC's complaint.

NACAC appealed the decisions of both courts to Division Two of the Court of Appeals where the two cases were consolidated. We accepted Division Two's certification of the consolidated cases pursuant to RCW 2.06.030.

One essential issue is presented.

ISSUE

Did the trial court err in denying NACAC's motion for appointment as guardian ad litem?

DECISION

CONCLUSION. A party cannot be appointed guardian ad litem for unknown individuals in order to permit that party to search files that are confidential by law in an attempt to find a plaintiff to represent in court.

NACAC seeks appointment as guardian ad litem pursuant to RCW 4.08.050 which reads:

Guardian ad litem for infant. When an infant is a party he shall appear by guardian, or if he has no guard-

ian, or in the opinion of the court the guardian is an improper person, the court shall appoint one to act. Said guardian shall be appointed as follows:

(1) When the infant is plaintiff, upon the application of the infant, if he be of the age of fourteen years, or if under that age, upon the application of a relative or friend of the infant.

(2) When the infant is defendant, upon the application of the infant, if he be of the age of fourteen years, and applies within thirty days after the service of the summons; if he be under the age of fourteen, or neglects to apply, then upon the application of any other party to the action, or of a relative or friend of the infant.

A guardian ad litem is a special guardian, appointed by the court to prosecute or defend, on behalf of an infant, or to represent an unborn person in pending litigation.[1] As a special guardian, the guardian ad litem's duties are limited in scope. He or she has no powers or duties prior to appointment or after the case has been terminated.[2]

The person appointed as guardian ad litem should be in a position to represent the best interests of the infant and to advise the court fairly.[3] While there is a dearth of Washington authority as to just who that person may be, Washington law does describe the qualifications for a guardian of a dependent child. A dependent child is one who has no parent, guardian, or custodian willing and capable of adequately caring for the child.[4] A guardian for such a child is one who legally has the care and management of the person

---

[1] 43 C.J.S. *Infants* § 222, at 571 (1978); Fraser, *Independent Representation for the Abused and Neglected Child: The Guardian Ad Litem,* 13 Cal. W. L. Rev. 16, 29 (1976–1977).

[2] R. Horowitz & H. Davidson, *Legal Rights of Children* § 3.03, at 76 (1984); Fraser, 13 Cal. W. L. Rev. at 29.

[3] R. Horowitz & H. Davidson, at 76; *see also In re Harney,* 19 Wn. App. 85, 87, 574 P.2d 395 (1978).

[4] *See* RCW 13.34.030(2).

and/or the estate of a child during the child's minority.[5] The court may appoint a guardian for a dependent child if the following statutory criteria are satisfied.

> Guardianship for dependent child—Qualifications for guardian. Any person over the age of twenty–one years who is not otherwise disqualified by this section, *any nonprofit corporation,* or any Indian tribe may be appointed the guardian of a child under RCW 13.34.232. No person is qualified to serve as a guardian who: (1) Is of unsound mind; (2) has been convicted of a felony or misdemeanor involving moral turpitude; or (3) is a person whom the court finds unsuitable.

(Italics ours.) RCW 13.34.236. NACAC argues that if a nonprofit corporation can serve as a permanent guardian for a dependent child, there is no reason why such a corporation cannot serve as a temporary guardian ad litem for an adoptable child.

While at first blush this argument appears logical, there are a number of problems with appointing NACAC as guardian ad litem in this case. First of all, almost all of the Pierce and Thurston County children already had guardians ad litem at the time that NACAC sought appointment. NACAC charges in its brief that those guardians are overworked and inadequately trained, but provides no factual support for these conclusory allegations. NACAC states in its brief that complaints from foster and adoptive parents prompted its action. Again, there is no support for this statement in the record, other than the same conclusory statement made by NACAC's attorney in an affidavit.

Another problem with NACAC's appointment is that RCW 4.08.050 states that a guardian ad litem shall be appointed either when an infant plaintiff of 14 requests one or when a friend or relative of a younger infant applies for one. Here, none of the 14–year–old children asked for NACAC's appointment, and no friends or relatives of the younger children requested NACAC's assistance.

---

[5]R. Horowitz & H. Davidson § 9.33, at 419; 39 C.J.S. *Guardian & Ward* § 2, at 11 (1976).

A more serious problem is the defendants' contention that there is no authority in RCW 4.08.050 for the appointment of a guardian ad litem over unknown individuals. Defendants argue that NACAC had no authority to seek such an appointment or to file the complaint because there is no named child in its motion and no named plaintiff in its complaint. As support, defendants cite *Jane Doe v. Governor,* 381 Mass. 702, 412 N.E.2d 325 (1980).

In *Doe,* the plaintiffs sought declaratory and injunctive relief to remedy what they claimed were deficiencies in the Commonwealth's system of protective services for abused and neglected children. The original complaint described the plaintiffs as "the abused and neglected children of the Commonwealth of Massachusetts", and was later amended to describe the plaintiffs as "Jane Doe" and "Richard Roe", suing individually and on behalf of the abused and neglected children of the Commonwealth. The complaint alleged that the two individual plaintiffs were abused and neglected children, resident in Massachusetts, and that their claims were typical of the claims of such children. Neither the individual plaintiffs nor their grievances were otherwise identified.

In *Doe,* the Supreme Judicial Court of Massachusetts held that the amended complaint was defective in failing to allege injury in fact to a specific, aggrieved individual.[6] While a plaintiff may proceed under a pseudonym to protect a privacy interest, a plaintiff is not thereby relieved of the requirement that the complaint allege a grievance on the part of a real and specific individual.[7]

In both of the cases before us, NACAC filed suit on behalf of children identified as "John and Jane Does". In the Pierce County case, NACAC filed suit on behalf of and sought to act as guardian ad litem for 87 John and Jane Does, about whom it declared:

---

[6]*Jane Doe v. Governor,* 381 Mass. 702, 705, 412 N.E.2d 325 (1980).

[7]*Doe,* at 705.

> These children are wards of DSHS. The biological parental rights were terminated or relinquished pursuant to law. They are children without families. Petitioner believes they are predominantly minority children and/or children with developmental disabilities. They are incompetent due to age.

The defendants' affidavit disclosed that only 23 children were then legally free for adoption in Pierce County. Of those 23, 6 were minorities and 7 were handicapped.

Thus, the description of the plaintiffs in the Pierce County complaint was less than accurate. As the facts set forth earlier illustrate, NACAC was no more precise in its Thurston County pleadings. While NACAC sued on behalf of children who did exist, it did not know or name those children as specific individuals. Similarly, NACAC sought appointment as guardian ad litem over children it did not know and could not accurately describe. Indeed, NACAC stated in its motion for appointment as guardian ad litem that if the motion were granted, NACAC would review the children's files to determine who actually might have some cause of action.

Juvenile records are confidential, and may be revealed only under circumstances not satisfied here.[8] By statute, adoption records are sealed, and may be opened only pursuant to court order upon a showing of good cause.[9] Adoption department and agency files are similarly confidential and can be revealed only in the limited situations specifically authorized by statute,[10] none of which exist here. This legislative policy of confidentiality encourages the development of the adoptive family as a stable social unit and also demonstrates respect for the privacy of the natural

---

[8]*See* RCW 13.50.010; RCW 13.50.100.

[9]RCW 26.33.330(1).

[10]*See* RCW 26.33.340.

parents.[11] As the Court of Appeals has explained,

> an adoption resembles to some extent a four–way contract between the state, the natural parents, the adoptive parents and the adopted child, and all of these interests are thought to be served by the policy of confidentiality.

*In re Sage,* 21 Wn. App. 803, 812–13, 586 P.2d 1201 (1978), *review denied,* 92 Wn.2d 1002 (1979).

State law thus prohibits NACAC from examining adoption or juvenile records without authorization. Without access to such records, NACAC apparently cannot name the children for whom it seeks appointment as guardian ad litem or for whom it filed suit. NACAC claims that complaints from foster and adoptive parents prompted its action. NACAC does not, however, detail those complaints or identify any of the persons it claims made them, nor does it explain why it did not file suit on behalf of or seek to be named guardian ad litem of the children for whom the allegedly complaining parties are responsible. No such complaining parties filed affidavits or otherwise appeared to support NACAC's actions in this case.

This court disapproved a wholesale examination of 189 confidential mental illness files without a strong showing of need in *State ex rel. Carroll v. Junker,* 79 Wn.2d 12, 25, 482 P.2d 775 (1971), holding that

> when complete strangers seek authority to open 189 current and active mental illness files ordered by statute to be kept closed, it amounts to a massive disclosure of the very records which the legislature has ordered closed. The request to open these 189 files invoked the direct and overt exercise of the court's discretion, and more than a perfunctory showing of need, benefit and freedom from harm was necessary to support the disclosures.

NACAC, a total stranger to the children involved in this case, has not made even a perfunctory factual showing of why it needs to be appointed guardian ad litem and why, in turn, it needs to examine confidential files. We are not per-

---

[11]*In re Sage,* 21 Wn. App. 803, 808, 586 P.2d 1201 (1978), *review denied,* 92 Wn.2d 1002 (1979).

suaded that it is either reasonable or judicious to authorize appointment of NACAC as guardian ad litem so that it may examine such files to determine whom it might want to eventually represent. Even more to the point, the appointment of NACAC as guardian ad litem on its terms would violate the confidentiality policy of the state adoption act and the interests of the children the legislation seeks to protect.

The trial courts did not err in declining to appoint NACAC guardian ad litem over children that the organization does not know and cannot identify so that it may examine confidential files in an effort to find a named plaintiff. Having decided this case on the basis stated, we do not address the basic propriety of bringing an action such as this or the various other arguments raised. The denials of NACAC's motions to be appointed guardian ad litem and the dismissals of NACAC's actions were proper.

Affirmed.

PEARSON, C.J., and UTTER, BRACHTENBACH, DOLLIVER, CALLOW, GOODLOE, and DURHAM, JJ., concur.

DORE, J. (dissenting)—The North American Council on Adoptable Children (hereinafter NACAC) is a nonprofit organization which focuses on the right of all children to a permanent and loving home. The council concentrates its efforts on children with special needs, children, who because of physical or mental handicaps or of mixed or minority race, are hard to place with permanent families. The NACAC has had success in placing these children and promoting legislative reform in a number of states, to the benefit of these children and society at large. In fact, the respondents in this case have never contested the expertise, integrity or unique qualifications of the NACAC to promote the rights of these hard to place children located within Pierce and Thurston Counties.

The NACAC has asserted a number of facts which indicate that DSHS and a number of other governmental agen-

cies have contributed to the problems associated with finding homes for these children who have special needs. The NACAC has alleged that these government bodies have failed to implement state and federal laws to protect the children, they have failed to train and staff foster care and adoptive workers, and most critically they have failed to recruit potential adoptive parents for these special needs children. The NACAC, if it were appointed guardian ad litem to protect these children, would attempt to remedy these deficiencies. I believe it should be allowed to make this valiant effort.

I recognize the majority's concerns that confidentiality problems would arise in this situation. I also am aware that the NACAC has not specified individual children who are suffering from governmental discrimination. Nevertheless, without reviewing the children's files, the NACAC cannot determine what needs to be done, even though everyone is well aware that a problem exists.

I believe an appropriate order could be entered which would protect the confidentiality of the children and their biological parents, while still allowing the NACAC to proceed with its investigation. For example, the names of the children could be deleted, while the files of these children are reviewed. In this way, the NACAC could review the files of the children without violating any confidentiality concerns. Such an order would be in everyone's best interests, as perhaps it would result in a few lonely, handicapped and/or minority children's being placed in a loving family environment.