

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE JUL 2 4 2014

for CHIEF JUSTICE

This opinion was filed for record
at 8:00am on July 24, 2014

for Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| AARON HUNDTOFTE and KENT ALEXANDER, | ) ) ) ) | |
| Respondents, | ) ) | No. 88036-1 |
| v. | ) ) ) | En Banc |
| IGNACIO ENCARNACIÓN and NORMA KARLA FARÍAS, and all others in possession, | ) ) ) ) ) | |
| Petitioners, | ) ) ) | |
| KING COUNTY SUPERIOR COURT OFFICE OF JUDICIAL ADMINISTRATION, | ) ) ) ) ) | |
| Respondent. | ) ) | Filed   JUL 2 4 2014 |

OWENS, J. -- Ignacio Encarnación and Norma Karla Farías were sued for unlawful detainer even though they had a valid lease and did nothing to warrant eviction. The case settled. They moved to amend the Superior Court Management Information System (SCOMIS) indices to replace their full names with their initials in order to hide the fact that they were defendants to the unlawful detainer action.

Encarnación and Farías argued that even though the unlawful detainer action was meritless, they could not obtain sufficient rental housing after prospective landlords learned that they had an unlawful detainer action filed against them. The superior court granted their motion and ordered that the indices be changed to show only their initials. The King County Superior Court Office of Judicial Administration (the clerk)[1] objected and appealed the order. The Court of Appeals reversed. Although we sympathize with Encarnación and Farías, and other renters in similar situations, we affirm the Court of Appeals. The public's interest in the open administration of justice prohibits the redaction of the indices in this case.

## FACTS

Encarnación and Farías moved into their Burien, Washington, apartment in December 2007. They renewed their lease twice, most recently in July 2009. That lease was for one year. One month later, Aaron Hundtofte and Kent Alexander purchased the apartment building and asked Encarnación and Farías to sign a new month-to-month lease. Encarnación and Farías refused, citing the lease for one year that they signed in July 2009. Hundtofte and Alexander sued Encarnación and Farías for unlawful detainer. Encarnación and Farías refused to leave and continued to tender rent. On November 12, 2009, the parties settled the dispute. Encarnación and

---

[1] In all other counties, this is known as the clerk's office. For the sake of clarity, we refer to this office as "the clerk."

Farías agreed to move out before December. In exchange, Hundtofte and Alexander agreed to return rental payments for the months of September, October, and November and to pay court costs and attorney fees. Hundtofte and Alexander also agreed to provide a favorable reference for them in the future.

Because of the unlawful detainer action, Encarnación and Farías found it difficult to find a new apartment. They eventually found a property that they liked and paid $80 for a background check as a part of their application, but the property manager turned them away, citing company policy to reject any applicant with an unlawful detainer record, regardless of the outcome. The favorable reference made no difference to the prospective landlord. Eventually, Encarnación and Farías found housing for at least six months at a home in Pierce County. But they worry that this home may be subject to foreclosure in the near future, and they wish to find housing closer to their old apartment in Burien. They fear that prospective landlords will be able to discover the previous unlawful detainer action by performing a background check that includes a search of court records.

Encarnación and Farías filed a motion to have their names redacted and replaced with their initials in the SCOMIS indices. The clerk opposed the motion, arguing that altering the indices was tantamount to destroying the records. The clerk argued that under GR 15(h)(1), a court may not order that a court record be destroyed unless authorized by statute.

3

The superior court granted the motion. The court found that landlords commonly deny housing to prospective tenants who have been named in unlawful detainers. The court found that this posed a serious and imminent threat to Encarnación and Farías' compelling interest in obtaining future rental housing. The court concluded that Encarnación and Farías "were not culpable and did nothing improper" to warrant the unlawful detainer action and that their privacy interest outweighed the public's interest in access to the court records. Clerk's Papers (CP) at 730. The court limited the redaction to seven years because the Fair Credit Reporting Act, chapter 19.182 RCW, prevents consumer reporting agencies—like tenant screening firms—from reporting unlawful detainer actions that are more than seven years old. *See* RCW 19.182.040(1)(b).

The clerk appealed, and the Court of Appeals reversed, finding that the public's interest in the open administration of justice was too great in this case to allow for redaction. *Hundtofte v. Encarnación*, 169 Wn. App. 498, 521-22, 280 P.3d 513 (2012). Encarnación and Farías petitioned this court, and we granted review. *Hundtofte v. Encarnación*, 176 Wn.2d 1019, 297 P.3d 707 (2013).

## ISSUE

Did the trial court err when it ordered that the SCOMIS indices be redacted to obscure the fact that the petitioners were defendants in an unlawful detainer action?

## ANALYSIS

### 1. The SCOMIS Indices Are a Court Record

As a threshold matter, we note that the SCOMIS indices are a court record. GR 31 defines a "court record" as including "[a]ny index, calendar, docket, register of actions, official record of the proceedings . . . and any information in a case management system created or prepared by the court that is related to a judicial proceeding." GR 31(c)(4)(ii). GR 15 governs the destruction, sealing, and redaction of court records, and it "applies to all court records, regardless of the physical form of the court record, the method of recording the court record, or the method of storage of the court record." GR 15(a). The SCOMIS indices are court records because they are both an "index" and "information in a case management system created or prepared by the court that is related to a judicial proceeding." GR 31(c)(4)(ii). A motion to redact the indices must be evaluated under GR 15. GR 15(c). The superior court properly treated the motion to redact the indices as a motion to redact a court record.

### 2. Standard of Review

An order to redact a court record is treated as an order to seal. GR 15(b)(4). We review a trial court's decision to seal a court record for abuse of discretion. *Rufer v. Abbott Labs.*, 154 Wn.2d 530, 540, 114 P.3d 1182 (2005). A trial court abuses its discretion when its "'decision is manifestly unreasonable, or is exercised on untenable grounds, or for untenable reasons.'" *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d

638 (2003) (quoting *State v. Blackwell*, 120 Wn.2d 822, 830, 845 P.2d 1017 (1993)). "A decision is based 'on untenable grounds' or made 'for untenable reasons' if it rests on facts unsupported in the record or was reached by applying the wrong legal standard." *Id.* (quoting *State v. Rundquist*, 79 Wn. App. 786, 793, 905 P.2d 922 (1995)).

### 3. The Open Administration of Justice Is a Vital Constitutional Safeguard, and This Court Will Not Allow Closure Except in the Most Unusual of Circumstances

Article I, section 10 of our constitution states that "[j]ustice in all cases shall be administered openly, and without unnecessary delay." CONST. art. I, § 10. The openness of our courts "is of utmost public importance" and helps "foster the public's understanding and trust in our judicial system." *Dreiling v. Jain*, 151 Wn.2d 900, 903, 93 P.3d 861 (2004). Thus, we must start with the presumption of openness when determining whether a court record may be sealed from the public. *Rufer*, 154 Wn.2d at 540. Any exception to this "vital constitutional safeguard" is appropriate only in the most unusual of circumstances. *In re Det. of D.F.F.*, 172 Wn.2d 37, 41, 256 P.3d 357 (2011). The party moving to override the presumption of openness and seal court records usually has the burden of proving the need to do so. *Rufer*, 154 Wn.2d at 540.

Under the General Rules, a court record may be sealed if a court "enters written findings that the specific sealing or redaction is justified by identified compelling privacy or safety concerns that outweigh the public interest in access to the court

record." GR 15(c)(2). "Agreement of the parties alone does not constitute a sufficient basis for the sealing or redaction of court records." *Id.* But GR 15 is not, by itself, sufficient—the rule must be harmonized with article I, section 10 of our constitution. *State v. Waldon*, 148 Wn. App. 952, 966-67, 202 P.3d 325 (2009). Thus, a court must analyze a motion to redact using both GR 15 and the five-step framework for evaluating a closure outlined in *Seattle Times Co. v. Ishikawa*, 97 Wn.2d 30, 37-39, 640 P.2d 716 (1982). *Waldon*, 148 Wn. App. at 967.

First, the party seeking to seal court records "must make some showing of the need therefor." *Ishikawa*, 97 Wn.2d at 37. The party "should state the interests or rights which give rise to that need as specifically as possible without endangering those interests." *Id.* If the sealing is meant to protect a right other than the right to a fair trial, the proponent must show a "'serious and imminent threat to some other important interest.'" *Id.*

Second, "'[a]nyone present when the closure [and/or sealing] motion is made must be given an opportunity to object.'" *Id.* at 38 (second alteration in original) (quoting *Federated Publ'ns, Inc. v. Kurtz*, 94 Wn.2d, 51, 62, 615 P.2d 440 (1980)). Third, the court and the parties must "analyze whether the requested method for curtailing access would be both the least restrictive means available and effective in protecting the interests threatened." *Id.* Fourth, "'[t]he court must weigh the competing interests of the [party seeking the redaction] and the public'," and it must

consider alternative methods to protect the interest. *Id.* (quoting *Kurtz*, 94 Wn.2d at

64). It must articulate its consideration in specific findings and conclusions. *Id.*

Finally, the order must be no broader than necessary to protect the interest. *Id.* at 39.

"If the order involves sealing of records, it shall apply for a specific time period with a

burden on the proponent to come before the court at a time specified to justify

continued sealing." *Id.* A court must use the *Ishikawa* steps and evaluate a motion to

seal or redact court records on a case-by-case basis. *Rufer*, 154 Wn.2d at 549-50.

### 4. The Trial Court Erred when It Ordered Redaction in This Case

In this case, the trial court abused its discretion because it applied an improper

legal standard and because its findings are not supported in the record. The interest at

stake—when properly articulated—is not as compelling as the one evaluated by the

trial court, and Encarnación and Farías have not shown a serious and imminent threat

to their interest. The court erred in concluding that their interest outweighed the

public's interest in the open administration of justice. Keeping court records open is a

vital constitutional safeguard. While we do not overlook the hardships that the

petitioners and other renters in similar circumstances face, we must fulfill our

independent obligation to protect the open administration of justice.

The privacy interest at stake in this case is not so compelling as to warrant

redaction. The petitioners and the trial court broadly articulated the privacy interest as

the "need to obtain rental housing for [Encarnación and Farías] and their three young

children." CP at 729-30. But the interests and rights justifying redaction must be articulated "as specifically as possible." *Ishikawa*, 97 Wn.2d at 37. Here, the petitioners found rental housing for their family, but they would prefer housing closer to Burien. Encarnación and Farías worry that their commute is too long and that their new property may face foreclosure. Because one property in Burien rejected them based on the court records, they fear that they will be unable to obtain future housing in their preferred location. Thus, the more specific articulation of their interest is the interest in finding future rental housing in a desired location. This is not as compelling of an interest as the one articulated by the trial court. Without more, it is not enough to override the constitutional presumption of openness.

Because we articulate the proper interest at stake in this case, the dissent accuses us of "rebalanc[ing] the facts from our ivory tower" and improperly applying the abuse of discretion standard of review. Dissent at 4-5. The dissent mischaracterizes our analysis for the sake of rhetoric. A trial court abuses its discretion when it applies an incorrect legal standard, and here the trial court did just that when it articulated the interest at stake. Rather than define the interest "as specifically as possible," as *Ishikawa* commands, 97 Wn.2d at 37, the trial court chose to articulate the need for housing very broadly. This is not a rebalancing of the facts, but rather a faithful application of the proper legal standard.

9

Encarnación and Farías have also failed to show a serious and imminent threat to their interest. We agree that housing is a very important interest, and we agree with the trial court that landlords sometimes deny rental housing to prospective tenants who were named in unlawful detainers.[2] But Encarnación and Farías must still show a serious and imminent threat to their interest. *Id.* They have not made that showing for two reasons. First, there is no evidence of an imminent rejection based on the unlawful detainer action. Encarnación and Farías do not have any applications pending—they merely cite one past rejection based on the action and speculate about their future inability to find a suitable home. The threat of rejection is not imminent. Second, in future applications, Encarnación and Farías can explain that the unlawful detainer was wrongfully filed and can provide a favorable reference from their previous landlords. Again, the record shows only one failed attempt to secure housing. While one property turned them away without considering their defense or checking their reference, it does not follow that every property will. Importantly, they found housing elsewhere—apparently on their second attempt—thus, it is not impossible for them to obtain housing. Pure speculation about the future inability to obtain housing in a desired location is not a serious and imminent threat to a compelling interest.

---

[2] Despite our conclusions in this case, we recognize the problems innocent renters face when they are named as defendants to unlawful detainer actions. We note that petitioners and amici could seek a statutory remedy for similarly situated renters.

Here too, the dissent mischaracterizes our review. As stated above, a trial court abuses its discretion if its conclusions are not supported in the record. The record in this case does not reflect a serious and imminent threat to Encarnación and Farías' housing interest. Rather, it shows one attempt to secure rental housing at a preferred location. The trial court and the dissent mistakenly assume that this one rejection is indicative of the *entire* rental market in Washington, when there is no such evidence in the record. The record indicates only that at least one landlord has a blanket policy of not renting to tenants who have been named in unlawful detainer actions. The only other evidence Encarnación and Farías presented regarding their inability to secure housing were their own declarations regarding their general fears about being named in the SCOMIS records. CP at 43 (Decl. of Encarnación) ("I do not believe that anyone else will rent to us without [sic] the court record appearing as if we were evicted from our apartment."); CP at 95 (Decl. of Farías) ("We thought that no one else would rent to us when they saw the case that was filed against us."). But the record also shows that Encarnación and Farías were able to find housing on their second attempt, despite the SCOMIS records. The trial court abused its discretion when it made the unsupported finding of a serious and imminent threat to their interest.

The trial court also erred when it found that the petitioners' interest in this case outweighed the public's interest in the open administration of justice. Our open courts

11

jurisprudence has always stressed the importance of transparency and access to court records. That is why we generally place the burden on the party who moves to seal court records and why a court may order a sealing only in the most unusual of circumstances. *Rufer*, 154 Wn.2d at 540; *D.F.F.*, 172 Wn.2d at 41. These are not the most unusual of circumstances. The parties settled their dispute, as do many other parties in unlawful detainer actions. Property owners in this state have an interest in being able to discover unlawful detainer actions that settle, and the public has a general interest in the open administration of justice. Altering the indices to obscure the fact that an action was filed will not help to "foster the public's understanding and trust in our judicial system." *Dreiling*, 151 Wn.2d at 903. We must ensure that justice is administered openly. The trial court erred when it found that the interest asserted in this case outweighed the public's interest in openness.

## CONCLUSION

The open administration of justice is a vital constitutional safeguard that may not be overridden to seal or redact court records except in the most unusual of circumstances. The circumstances of this case do not warrant redaction of the SCOMIS indices. The petitioners have not shown a serious and imminent threat to a compelling interest, and the interest at stake does not outweigh the public's interest in the open administration of justice. We affirm the Court of Appeals.

*Hundtofte v. Encarnación*
88036-1

WE CONCUR:

No. 88036-1

MADSEN, C.J. (concurring)—Under the plain language of GR 15, the trial court erred in ordering the King Superior Court Clerk to replace the names of Ignacio Encarnación and Norma Karla Farías with their initials in the SCOMIS (Superior Court Management Information System) index. Because GR 15 resolves this case, the lead opinion's analysis of the *Ishikawa*[1] factors is unnecessary.

Essentially, Encarnación and Farías want to change a court record so that their status as parties in an unlawful detainer action cannot be discovered by potential landlords. But, altering the existing record in this way makes their involvement in the court proceeding virtually undiscoverable by anyone for any purpose. This result is contrary to the meaning and purpose of GR 15. GR 15 establishes a uniform procedure for the destruction, sealing, and redaction of all court records, but nothing in the rule permits a court to change court records as the trial court did here.

I concur in the result reached by the lead opinion.

Discussion

A. Standard of review

Interpretation of court rules is reviewed de novo. *State v. McEnroe*, 174 Wn.2d 795, 800, 279 P.3d 861 (2012). The same principles that apply to determine the meaning

---

[1] *Seattle Times Co. v. Ishikawa*, 97 Wn.2d 30, 640 P.2d 716 (1982).

of statutes apply to determine the meaning of court rules. *Id.* The goal is to effectuate the intent of the drafters. To this end, when a plain meaning can be determined a court will give effect to the plain meaning as the expression of the drafters' intent. *State v. Chhom*, 162 Wn.2d 451, 458, 173 P.3d 234 (2007). "Plain meaning is discerned from reading the rule as a whole, harmonizing its provisions, and using related rules to help identify the legislative intent embodied in the rule." *Id.* (citing *State v. Williams*, 158 Wn.2d 904, 908, 148 P.3d 993 (2006)).

A trial court's decision to seal or unseal a court record is reviewed for abuse of discretion. *Rufer v. Abbott Labs.*, 154 Wn.2d 530, 540, 114 P.3d 1182 (2005). The trial court's ruling that allowed redaction is subject to this abuse of discretion standard. Generally, when a trial court applies the wrong legal standard an abuse of discretion will necessarily be found and the case remanded for the trial court to apply the correct standard. *Id.* (where the trial court based its decision on an improper rule, we will remand to the trial court to apply the correct rule). To determine whether the legal standard applied by the trial court is the correct legal standard involves a question of law that is reviewed de novo. *See Dreiling v. Jain*, 151 Wn.2d 900, 908, 93 P.3d 861 (2004).

B.  <u>General Rule 15 does not permit substitution of initials for parties'
   names in the court index</u>

In 2006, GR 15 was substantially revised in the wake of our decision in *Rufer* to include detailed procedural as well as substantive provisions governing destruction, sealing, or redaction of a court record. *See* 2 KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE GR 15 author's cmts. at 54-56 (7th ed. Supp. 2013).

The electronic records index at issue here is a court record under GR 15(b)(2) and GR 31(c)(4). However, the purported "redaction" of names from the index is not an action authorized under GR 15. "Redaction" is defined as "to protect from examination by the public and unauthorized court personnel a portion or portions [of] a specified court record." GR 15(b)(5). Under GR 15(b)(4), a motion or order to delete, purge, remove, excise, erase, or redact shall be treated as a motion or order to seal. An order to replace the names of the parties with initials is a *change to the record*—not a redaction as defined in the rule. Accordingly, the trial court's ruling is not authorized by GR 15's provisions governing redaction.

Moreover, an order to redact a record is less restrictive than an order to seal a court record. Yet, even when a court orders a record sealed, the parties' names must be preserved on the docket and made available to the public. The obvious purpose of the rule is to permit orders that protect a court record's *content* from examination and not to protect the identity of the parties, unless otherwise permitted by statute. For example, GR 15(c)(4) provides:

> When the clerk receives a court order to seal the entire court file, the clerk shall seal the court file and secure it from public access. All court records filed thereafter shall also be sealed unless otherwise ordered. *The existence of a court file sealed in its entirety, unless protected by statute, is available for viewing by the public on court indices.* The information on the court indices is limited to the case number, *names of the parties*, the notation "case sealed," the case type and cause of action in civil cases and the cause of action or charge in criminal cases, except where the conviction in a criminal case has been vacated, section (d) shall apply. The order to seal and written findings supporting the order to seal shall also remain accessible to the public, unless protected by statute.

3

GR 15(c)(4) (emphasis added).

GR 15 also carries forward the important procedural significance of court dockets that identify parties by complete names. GR 15(c)(5)(A) and (C) provide that when a

> [court] clerk receives a court order to seal specified court records the clerk *shall*:
> ... On the *docket*, preserve the docket code, document title, document or subdocument number and date of the original court records;
> [and] [f]ile the order to seal and the written findings supporting the order to seal. Both shall be accessible to the public.

(Emphasis added.) A "docket" is "[a] formal record in which a judge or court clerk briefly notes all the proceedings and filings in a court case." BLACK'S LAW DICTIONARY 552 (9th ed. 2009). The docket serves as a table of contents and map of the proceedings for courts, lawyers, and the public to locate court records. Because the docket is an important means to effectuate open administration of justice, a reliable docket sheet serves the fairness and appearance of fairness required under our constitution.

The importance of the docket was apparent in Washington's territorial days, when session laws from the first legislative assembly in 1854 required clerks to keep an execution docket as a public record. LAWS OF 1855 § 234, at 173. The law expressly provided, in relevant part, "the clerk shall enter in said execution docket a statement of each final judgment, rendered at such term, containing (1st) the names, *at length*, of all the parties; (2d) the date of the judgment and against whom rendered." *Id.* § 235, at 174 (emphasis added).

4

The requirement that parties' names "at length" be recorded shows early intent that parties' full names be accessible and not just their initials. Today, GR 15 continues to make the parties' complete names publicly accessible. If a docket or court index is changed as the trial court allowed here, it becomes undiscoverable by the public. This is clearly inconsistent with Washington's historical treatment of a docket and the meaning of GR 15.

Use of complete names in dockets has been important in contexts other than indices. For example, where a court file has been destroyed in a criminal case, a docket sheet may substitute for a judgment and sentence because the docket bears a "'minimum indicia of reliability.'" *State v. Mendoza*, 139 Wn. App. 693, 710-11, 162 P.3d 439 (2007) (internal quotation marks omitted) (quoting *State v. Blunt*, 118 Wn. App. 1, 8, 71 P.3d 657 (2003)), *aff'd*, 165 Wn.2d 913, 205 P.3d 113 (2009). It is highly unlikely that an entry with only the parties' initials would bear such indicia of reliability, even if the entry could be found in the first place.

In short, GR 15 preserves a long-established principle that the complete names of parties are to be listed with the actions to which they are parties.

There are exceptions, but these exceptions are carefully delimited. For example, in cases of sexual assault and child victims, the court shall not disclose the child's identity to the public or in any court proceeding or court record. RCW 10.52.100. Courts have used pseudonyms or initials to protect the identity of a child victim pursuant to RAP 3.4. *See Marcum v. Dep't of Soc. & Health Servs.*, 172 Wn. App. 546, 550, 290 P.3d

1045 (2012) (use of pseudonym to protect the identity of abused and neglected child); *see also* RCW 13.34.115 (the court may close a hearing when it is in the best interest of the child).

Washington law recognizes several other areas in which the public has no right of access. Records of juvenile justice or care agencies are deemed confidential at the juvenile court level pursuant to RCW 13.50.100 (including juvenile nonoffender, juvenile dependency, truancy, at-risk youth, child in need of services, termination of parental rights, and developmental disability placement records). GR 22(c)(2). Other examples include adoption records, mental illness commitment records, alcohol and drug treatment commitment records, paternity records (except final orders), and confidential name change records.

But here there is no statutory authorization for Encarnación and Farías to protect their identities, as parties to a court proceeding, from the public on the alleged ground that they have suffered discrimination because of a wrongful unlawful detainer action. The trial court's ruling is contrary to the plain meaning of GR 15 because it allows a change to court records under a theory of redaction that is not permitted even under the more restrictive sealing provisions of GR 15. The language in the court rule is mandatory, not permissive. This case is controlled by the procedural provisions in GR 15.

The trial court misapplied GR 15 when it ruled that a court record, specifically the court's electronic records index, could be "redacted" by substituting the initials of parties

to an unlawful detainer action for their complete names. Because the trial court misinterpreted and misapplied the law, the court abused its discretion. While remand is the usual course when the trial court misapplies the law, here, as a matter of law, the motion to "redact" must be denied. GR 15 bars changing a court record to reflect the parties' initials rather than their complete names as parties to the action.

Finally, rather than deciding this case on the basis of GR 15, the lead opinion decides that the rule is not sufficient by itself and it must be harmonized with article I, section 10 of the Washington State Constitution. Unfortunately, the majority does not adequately consider the procedural provisions in GR 15 that resolve this case. GR 15 sets forth clear procedural requirements expressed in mandatory language that the court must follow. The court cannot offer relief where the rule does not permit it.

## Conclusion

Because a change to the court record here is not permitted under GR 15, it is unnecessary to apply the *Ishikawa* balancing test to determine whether the action may be permitted under *Ishikawa*. The court should hold that the trial court erred in ordering the King County Superior Court clerk to replace Encarnación's and Farías's names with their initials in the SCOMIS index because this action is not permitted by GR 15.

I concur in the result.

Madsen, C.J.

No. 88036-1

GONZÁLEZ, J. (dissenting)—Ignacio Encarnación and Norma Karla Farías did nothing to warrant eviction. They had a valid lease, were current on rent, and did not engage in any conduct proscribed by their rental agreement. Despite all this, an unlawful detainer action was filed against them. Even though they negotiated a favorable settlement, they had, and probably will have in the future, substantial difficulties in finding housing. Because of these difficulties, they have found themselves in an unsuitable and unstable living situation. To the justices of the lead opinion, the public's interest in having access to Encarnación's and Farías's full names in the case caption of the court record—which should never have existed in the first place—outweighs the family's interest in having access to suitable, stable housing. In reaching this conclusion, the lead opinion has ignored the careful findings of the trial court judge, overstepped the bounds of our abuse of discretion review, and minimized the reality of the housing situation facing Encarnación, Farías, and their three children. Not only do I disagree with the resolution of the merits of this case, but I am also unconvinced that the King County Department of Judicial

Administration (Clerk), the entity that appeared before us, has standing to appeal the trial court's order. I find it particularly troubling that the lead opinion has provided no justification for allowing the Clerk, neither a party nor an intervenor in the case, to maintain the appeal. For these reasons, I respectfully dissent.

A. Standing

"Only an aggrieved party may seek review by the appellate court."[1] RAP 3.1. Even if we overlook the fact that the Clerk did not formally intervene in this case at the trial stage, the lead opinion fails to establish the Clerk, the entity that challenged the trial court's order, was an aggrieved party for purposes of appellate standing. Here, the Clerk does not have a sufficiently substantial right in dispute and has not suffered sufficient injury to satisfy this standing requirement.[2] The trial court's order does not deny an individual or property right to the Clerk, nor does it impose a burden

---

[1] An "aggrieved party" is "one whose personal rights or pecuniary interests have been affected." *State v. Taylor*, 150 Wn.2d 599, 603, 80 P.3d 605 (2003) (citing *State ex rel. Simeon v. Superior Court*, 20 Wn.2d 88, 90, 145 P.2d 1017 (1944)). In a case predating the RAP, we observed

> "no one can appeal to an appellate court unless he has a substantial interest in the subject matter of that which is before the court and is aggrieved or prejudiced by the judgment or order of the court. Some personal right or pecuniary interest must be affected. The mere fact that one may be hurt in his feelings, or be disappointed over a certain result, or feels that he has been imposed upon, or may feel that ulterior motives have prompted those who instituted proceedings that may have brought about the order of the court of which he complains does not entitle him to appeal. He must be aggrieved in a legal sense."

*Sheets v. Benevolent & Protective Order of Keglers*, 34 Wn.2d 851, 855, 210 P.2d 690 (1949) (internal quotation marks omitted) (quoting *Simeon*, 20 Wn.2d at 90).

[2] The Clerk argues that standing is satisfied because the trial court's order imposes a burden or obligation on the Clerk to comply with an illegal task. This, however, is not commensurate with the purported injury in this case—whether the public will be deprived access to court records.

2

or obligation that would justify standing. Though the Clerk has a duty to maintain the public record, at best, the scope of this duty extends to the Clerk's procedural role under GR 15. No such procedural questions are at issue here. Indeed, the lead opinion resolves the case on the basis of the test established in *Seattle Times Co. v. Ishikawa*, 97 Wn.2d 30, 37-39, 640 P.2d 716 (1982), which balances the interest of a party seeking to seal a record against the interest of the public in maintaining the open administration of justice.[3] This goes well beyond the Clerk's interest and role as the custodian of public records. Permitting the Clerk to have standing on this appeal without interrogating the issue sets a bad precedent and undermines the purpose of RAP 3.1.

B. Abuse of Discretion Analysis

The lead opinion correctly recites that we review the issuance of a redaction order for abuse of discretion. But, the lead opinion fails to faithfully apply this appropriate standard of review. "Abuse of discretion occurs only when a trial court's decision is 'manifestly unreasonable, or exercised on untenable grounds, or for

---

[3] The Clerk stresses that it "does not oppose Encarnación's [and Farías's] motion on *Ishikawa*-related grounds," and it is "disinclined to speak on behalf of either the general public or Encarnación and Farías as to the balancing of their competing interests." Suppl. Br. of King County Dep't of Judicial Admin. at 4. The Clerk claims a substantial right in its duty to maintain the public record and contends the trial court's order forces it to engage in actions not allowed under GR 15. *Id.* at 4-5. Yet, the lead opinion's resolution of this case rests primarily on its discussion of the trial court's application of *Ishikawa* factors. *See* lead opinion at 8-9. It is safe to say then, that the lead opinion views the interest in dispute, and the injury at issue, as one that affects the public's open access to the administration of justice. The Clerk is not the proper party to vindicate this right.

3

untenable reasons.'" *Moeller v. Farmers Ins. Co. of Wash.*, 173 Wn.2d 264, 278, 267 P.3d 998 (2011) (internal quotation marks omitted) (quoting *Mayer v. Sto Indus., Inc.*, 156 Wn.2d 677, 684, 132 P.3d 115 (2006)). "A discretionary decision rests on 'untenable grounds' or is based on 'untenable reasons' if the trial court relies on unsupported facts or applies the wrong legal standard; the court's decision is 'manifestly unreasonable' if 'the court, despite applying the correct legal standard to the supported facts, adopts a view that no reasonable person would take.'" *Mayer*, 156 Wn.2d at 684 (internal quotation marks omitted) (quoting *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003)). Instead of applying these standards, the justices of the lead opinion weigh the evidence and substitute their own judgment for that of the trial court. This is not abuse of discretion review. At best, the lead opinion engages the record de novo.

The lead opinion finds that "[i]n this case, the trial court abused its discretion because it applied an improper legal standard and because its findings are not supported in the record." Lead opinion at 8. But, to stay within the confines of abuse of discretion review, the supposed error in application must have either (1) been based on unsupported facts or (2) adopted a view that no reasonable person would take. The facts on which the trial judge relied were well supported by numerous declarations and ample testimony. The view taken by the trial court was entirely reasonable given these supported facts.

Simply put, the justices of the lead opinion would have preferred the lower court to interpret and weigh the facts differently and reach a different factual conclusion. In other words, the lead opinion has rebalanced the facts from our ivory tower to find the burden of redaction for a Clerk without standing is more compelling than the prospect of homelessness for a family with small children. Not only is this position callous but also, to get there, the lead opinion goes well beyond abuse of discretion review.

The lead opinion states that "[t]he privacy interest at stake in this case is not so compelling as to warrant redaction." Lead opinion at 8. Specifically, the lead opinion finds that the "trial court broadly articulated the privacy interest as the 'need to obtain rental housing for [Encarnación and Farías] and their three young children'" when it should have been articulated as "the interest in finding future rental housing in a desired location." *Id.* at 8-9 (alteration in original) (quoting Clerk's Papers (CP) at 729-30). This is an impermissible reconsideration of the facts. Apparently, the justices of the lead opinion do not find the supporting declaration, which established that Encarnación and Farías could not find housing and reasonably feared homelessness because of an errant eviction record, sufficiently persuasive. It is not, however, this court's role to do that.

It is worrisome that the justices of the lead opinion have, without the benefit of testimony or other attributes of trial, substituted their own interpretation of the facts and judgment of the evidence for those of the trial judge. Abuse of discretion is a

deferential standard of review. Without demonstrating that the trial court relied on unsupported facts or adopted a view that no reasonable person would take—which the lead opinion has failed to do—we must accept the lower court's factual conclusions.

C. *Ishikawa* Analysis

The right embodied in article I, section 10 of the Washington Constitution— that justice be administered openly—is not absolute. *Dreiling v. Jain*, 151 Wn.2d 900, 909, 93 P.3d 861 (2004). "[W]hile we presume court records will be made open and available for public inspection, court records may be sealed 'to protect other significant and fundamental rights.'" *Rufer v. Abbott Labs.*, 154 Wn.2d 530, 540, 114 P.3d 1182 (2005) (quoting *Dreiling*, 151 Wn.2d at 909). "To balance the constitutional requirement of the open administration of justice against potentially conflicting rights, we directed courts to apply the five *Ishikawa* factors."[4] *Id.* at 544 (citing *Dreiling*, 151 Wn.2d at 908, 913).

Here, the lower court properly applied the *Ishikawa* factors. Encarnación and Farías have shown the need for redaction as a result of a compelling interest in securing housing for themselves and their young children. The trial judge allowed objection by present parties. The trial judge analyzed the proposed redaction to ensure that it was both the least restrictive means available and effective in protecting the interests at stake. The trial judge weighed the interests of Encarnación and Farías

---

[4]*See* lead opinion at 7.

and their children against those of the public. And finally, the trial judge ensured that the order applied for a limited and specific time period that is justified by the private interest. All of the *Ishikawa* factors were faithfully considered.

Even if it were appropriate for us to reevaluate the careful factual findings made by the trial court, the lead opinion misstates and misapplies the standard that Encarnación and Farías must meet to prevail. The lead opinion finds that an exception to the presumption of openness "is appropriate only in the most unusual of circumstances." Lead opinion at 6 (citing *In re Det. of D.F.F.*, 172 Wn.2d 37, 41, 256 P.3d 357 (2011)). And, in conclusion, the lead opinion proclaims that "[t]hese are not the most unusual of circumstances." Lead opinion at 10. This is not the controlling standard.

Though the *D.F.F.* lead opinion does use the "most unusual circumstances" language, 172 Wn.2d at 41, that opinion only received four signatures and does not articulate our established legal standard. No other case applying the *Ishikawa* factors requires litigants to make such a stringent showing. Indeed, in *Rufer*, we established that "'documents may not be kept from public view without some overriding interest requiring secrecy.'" 154 Wn.2d at 542 (internal quotation marks omitted) (quoting *Dreiling*, 151 Wn.2d at 910). Requiring *some* overriding interest from a party seeking to redact a public record is not requiring the "most unusual of circumstances." Overriding interest here means the private interest outweighs the competing interest of

public access to the redacted information. The majority fails to articulate and apply the proper standard.

When the correct law is applied to established facts, Encarnación and Farías have demonstrated the existence of an overriding interest. Having access to acceptable housing is not just a compelling interest on its own, but, practically speaking, it is also necessary to secure other fundamental rights and interests. Access to employment, education, voting, health care, and most other public and private interests is greatly diminished, if not eliminated, when stable, suitable housing is unavailable.

For Encarnación and Farías, this interest was threatened by the existence of the public record. The trial court weighed the evidence presented and found that "Mr. Encarnación and Ms. Farías have already attempted to obtain rental housing and were denied by reason of this [unlawful detainer] action having been filed against them, and [that they] have good reason to expect that other rental applications will also be rejected so long as the record of this unlawful detainer suit remains available through SCOMIS [Superior Court Management Information System]." CP at 730. Further, the trial judge established that "Mr. Encarnación and Ms. Farías currently live in a home that is not suitable for their needs and is facing a bank foreclosure, and [they] have a good faith expectation that they will need to change residences in the near future." *Id.* To the trial court, "this is a compelling circumstance that requires sealing

or redaction." *Id.* (citing GR 15(c)(2)(F)). My colleagues who signed the lead opinion believe that no reasonable person would so conclude. They are wrong.

It is the majority's reasoning that fails. The majority found that because "Encarnación and Farías do not have any [rental] applications pending," they have failed to "show a serious and imminent threat to their interest." Lead opinion at 9. The lead opinion adds that "they found housing elsewhere . . . thus, it is not impossible for them to obtain housing." Lead opinion at 10. The implication of this sentiment is perhaps even more alarming than the blatant disregard of our limits under abuse of discretion review. If an unsuitable and unstable housing situation and a prior rejection of a housing application as a result of the SCOMIS record is insufficient to establish their compelling interest in housing, it seems that Encarnación and Farías could satisfy the justices of the lead opinion only if they and their children were, in fact, homeless. And while the lead opinion finds that "[p]ure speculation about the future inability to obtain housing in a desired location is not a serious and imminent threat to a compelling interest," lead opinion at 10, it has, without any evidence or factual basis, suggested that the threat of future rejection is not imminent because "Encarnación and Farias can explain that the unlawful detainer was wrongfully filed and can provide a favorable reference from their previous landlords," *id.* Not only does the record contradict both of these assertions and establish Encarnación and Farías's compelling interest in suitable, stable housing, but the lead opinion also overstates the public's interest in having access to these court records.

The lead opinion is correct that the public has an interest in the open administration of justice and that "[o]ur open courts jurisprudence has always stressed the importance of transparency and access to court records." Lead opinion at 11-12. But, this right is not absolute. And so the trial court could reasonably conclude that the public's interest is not diminished by the redaction of Encarnación's and Farías's full names from the case caption because doing so "will not materially impair members of the public from utilizing the records of this action for . . . public purposes, such as evaluating the Court's performance or conducting financial audits on court records, particularly as the Defendants' names will remain on other court documents within the case file." CP at 730-31. After all, it is important to remember just how measured and narrowly tailored the ordered redaction is here. The redaction concerns only the case name and lasts no longer than necessary to prevent harm to Encarnación and Farías's interest.

Finally, that "[p]roperty owners in this state have an interest in being able to discover unlawful detainer actions that settle," lead opinion at 12, is not commensurate with the public's interest guaranteed by article I, section 10. We need not balance the private business interests of landlords against the privacy interest of Encarnación and Farías as part of the *Ishikawa* analysis. But, even if we did, the privacy interest prevails.

Though I respect the lead opinion's desire to protect the public's interest in the open administration of justice, the level of review and reasoning applied by the lead

10

opinion threatens to make the command contained in article I, section 10 absolute at the expense of compelling private interests. This is not a wise direction to take settled law. Because we must give the trial court due deference and because Encarnación and Farías's interest in suitable, stable housing far outweighs the public's interest in immediately accessing a record that should have never been created, I respectfully dissent.

González, J.

Gordon McCloud, J.

No. 88036-1

STEPHENS, J. (concurring in dissent)—This case presents valid, competing concerns. The public has an interest in open court proceedings and records. Ignacio Encarnación and Norma Karla Farías have an interest in obtaining housing without having their status as defendants in a dismissed unlawful detainer action used against them. While most of the attention in this case has focused on comparing these concerns, of equal concern to me is whether we should entertain the merits of an "appeal" brought by a court clerk who disagrees with a judge's order under GR 15. By quickly stepping over this issue to address the merits of the action taken by the trial court, I believe we set a dangerous precedent. I would dismiss this appeal on the ground that the court clerk lacks standing to appeal and concur in that portion of Justice González's dissent.

I recognize court clerks carry out important functions under GR 15, but those functions should not be construed in a way that puts the clerk's office in an adversarial relationship with the court issuing an order to seal or redact court records.

Allowing the clerk to "appeal" the judge's order on the ground that the order is unlawful is unprecedented. At a minimum, as Justice González's dissent points out, the clerk is not an aggrieved party under RAP 3.1 and therefore lacks standing to appeal. Dissent at 2-3. More critically, the clerk serves as part of the court when acting in response to a judge's order. The mere fact that GR 15 speaks to steps the clerk must take when the judge issues an order does not provide an opening to appeal an order the clerk believes is contrary to the rule or, more generally, is unlawful. I am concerned that recognizing the ability of a clerk to appeal in this instance will only invite further questions of other instances in which a clerk may feel obligated to challenge a judge's order on the ground that it contravenes not merely a court rule, but a statute or constitutional provision.

While it is possible to conceive of a situation in which a clerk, as a member of the public, might seek to intervene in a case to raise the public interest in open courts and records under article I, section 10 of the Washington State Constitution, that is not posture of this case. *See Yakima County v. Yakima Herald-Republic*, 170 Wn.2d 775, 246 P.3d 768 (2011) (recognizing possibility of limited intervention of newspaper in criminal case in which both parties sought closure of court records). And, as the dissent notes, the clerk here disavows any reliance on *Seattle Times Co. v. Ishikawa*, 97 Wn.2d 30, 35, 640 P.2d 716 (1982), in which a nonparty newspaper filed a separate action against the trial judge. Dissent at 3 n.3. Thus, there is simply no proper party bringing this appeal. I do not deny that the questions raised in this

case are interesting and important, but this fact merely tests our commitment to long-standing justiciability requirements; I would hold firm.

Stephens, J.

Fairhurst, J.