# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

THE STATE OF WASHINGTON ,

Respondent,

v.

LEVI QUERILLA STAPLES, JR.,

Appellant.

No. 78460-9-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: December 30, 2019

APPELWICK, C.J. — A jury found Staples guilty of breaking into a woman's home and forcibly groping her. Staples contends that the use of the victim's initials in various court documents violated the public trial right and in the jury instructions was a judicial comment on the evidence. He contends that community custody conditions imposed upon him are not crime-related and infringe on his constitutional rights to free speech and privacy. He also challenges sufficiency of the evidence. We affirm.

## FACTS

On November 25, 2007, Levi Staples observed the victim[1] talking on her cell phone through her window in the Country Hills Apartments in Renton. Staples knocked on the victim's door and asked if he could borrow her phone.

Staples claims that the victim then invited him into her home to use the phone. Once inside the house, he claims that he tried to take the phone, but that

---

[1] The identity of the victim is not necessary for the analysis in this opinion.

the victim hit him with a pot that she had been holding in her hand since opening the door, and he fled.

The victim's version of events is different. She claims that she partially opened her door and gave him the phone. She then observed Staples pretend to make a phone call. He then returned the phone to the victim. Staples forced his way into the apartment through the door. He shut the door and locked it behind him.

The victim started screaming, and Staples covered her mouth, put a knife to her throat, and said, "[b]itch shut the f[***] up, I've got a knife." Staples then began groping the victim and whispering "perverse" comments in her ear. The victim resisted, and the two wrestled around the apartment, with Staples continuing to grope the victim. The wrestling eventually moved into the kitchen, where the victim was able to grab a pot from the stove and strike Staples in the head. The blow caused Staples's blood to splatter in the kitchen and allowed the victim to escape. She fled the apartment but observed Staples enter her bedroom before he fled.

The victim banged on her neighbor's door, screaming, "Let me in, let me in. He tried to rape me." Her neighbor let her in and locked the door. She described the victim as "hysterical" and "petrified." She called the police.

The victim told the officer that arrived that she had been sexually assaulted. The officer described her as "visibly upset" and crying. The officer did not notice any visible injuries on the victim. Upon walking through the apartment, the officer found blood in the kitchen, the hallway, and on the victim's bedroom door.

2

The victim had never met or seen her assailant prior to the assault. The case went unsolved until police collected Staples' DNA (deoxyribonucleic acid) in a separate investigation in 2015 and matched it to the DNA collected from the victim's apartment.

Staples was charged with indecent liberties.[2] Both the State and defense identified the victim by her initials in their documents. Her name was used at the CrR 3.5 hearing. She testified under her full name and was referred to by her full name throughout trial.

The jury found Staples guilty as charged. He was sentenced to 62 months to life imprisonment, with a lifetime of community custody if released from prison. As conditions of community custody, Staples is required to notify his supervising community corrections officer (CCO) of any dating relationship, disclose his sex offender status prior to any sexual contact, and refrain from sexual contact unless approved by a treatment provider. He is also required to obtain his CCO's permission before changing work locations.

Staples appeals.

## DISCUSSION

Staples alleges four errors. First, he argues that the use of the victim's initials rather than her full name in various court documents violated article I, section 10 of the Washington Constitution. Second, he claims the use of the

---

[2] Staples was also charged with assault in the second degree as a result of the above referenced investigation. That crime involved Staples having sexual contact with an acquaintance while she was sleeping. Staples pleaded guilty to that charge.

victim's initials in the jury instruction constituted a judicial comment on the evidence. Third, he argues the court erred in imposing various special conditions of community custody upon him, because those conditions were not crime-related and infringed on his constitutional rights. Last, he argues that there was insufficient evidence to support his conviction.

I. Public Trial Right

Staples argues that the use of the victim's initials in various court documents violated article I, section 10 of the Washington Constitution. The Washington Constitution demands that "justice in all cases shall be administered openly" and also gives defendants an individual right to a public trial. CONST. art. I, §§ 10, 22. These related constitutional provisions are often collectively called the "public trial right." State v. Love, 183 Wn.2d 598, 605, 354 P.3d 841 (2015). Staples does not allege a violation of his own right to a public trial under section 22. Rather, he asserts a violation of section 10, "justice in all cases shall be administered openly," which is a "command to the judiciary" rather than an individual right of the defendant. State v. Herron, 177 Wn. App 96, 105, 318 P.3d 281 (2013), aff'd, 18 Wn.2d 737, 356 P.3d 709 (2015). Article I, section 10 protects all members of the public. In re Det. of Ticeson, 159 Wn. App. 374, 381-82, 246 P.3d 550 (2011), abrogated on other grounds by State v. Sublett, 176 Wn.2d 58, 292 P.3d 715 (2012). As a member of the public, Staples has standing to challenge a violation of article I, section 10. Id. Staples did not object to the use of the victim's initials at trial. He nevertheless argues that he is not precluded from raising the issue for the first time on appeal because it is a manifest error affecting a constitutional right.

4

Improper courtroom closure is a constitutional error that may be raised for the first time on appeal. Ticeson, 159 Wn. App. at 382-83. Whether the public trial right has been violated is a question of law reviewed de novo. Id. at 379.

Courts may restrict the public's access to court records to protect other interests. Hundtofte v. Encarnación, 181 Wn.2d 1, 5-6, 330 P.3d 168 (2014); Seattle Times Co. v. Ishikawa, 97 Wn.2d 30, 36, 640 P.2d 716 (1982). The Ishikawa court laid out five factors[3] that must be considered before a restriction of the public's article I, section 10 right may take place. See id at 37-39. However, not all arguable courtroom closures require satisfaction of the five-part test. State v. Slert, 181 Wn.2d 598, 604, 334 P.3d 1088 (2014). The court must first utilize the "experience and logic" test to determine whether the public trial right is implicated by a purported court closure. Id. The "experience" prong asks whether the place and process have historically been open to press and general public. Id. The "logic" prong asks whether public access plays a significant positive role in the functioning of the particular process in question. Id. If the answer to both questions is yes, then the public trial right attaches. Id. The court must then determine if a closure has in fact occurred. Love, 183 Wn.2d at 605. The appellant bears the burden of showing both that the public trial right has attached, and that a closure

---

[3] (1) the proponent of the closure and/or sealing must make a showing of need; (2) anyone present when the closure motion is made must be given an opportunity to object; (3) the court, proponents, and objectors should analyze whether the requested method of curtailing access is the least restrictive means available to protect the threatened interest; (4) the court must weigh the competing interests of the defendant and the public and (5)The order must be no broader than necessary to serve its purpose. Ishikawa, 97 Wn.2d at 37-39.

5

has occurred. Id.at 605. If the appellant can carry their burden, it shifts to the proponent of the closure to prove that it was justified. Id.

We need not engage in a full experience and logic analysis when case law has applied the public trial right to the proceeding at issue. Id. at 605. Prior cases make clear that court records are open to the public unless sealed by the court. See Rufer v. Abbott Labs., 154 Wn.2d 530, 540, 114 P.3d 1182 (2005). This presumption applies to all records filed with the court in anticipation of a court decision. See id. at 549. Our Supreme Court has also held in the past that the use of initials in these records is a redaction. Hundtofte, 181 Wn.2d at 5-6. Such a redaction can be considered a closure.[4] See id. at 6-7. However, Staples has failed to establish that a closure has occurred.

The facts here are similar to Love, 183 Wn.2d at 601-04. There, both parties conducted preemptory challenges during jury selection in writing rather than orally. Id. at 602-03. After that process concluded the struck jury list was filed in the court record. Id. at 603. The argument was that this restricted the public's access to that information. Id. at 604. Our Supreme Court, however, found no closure had occurred because the public was able to witness the entire process, including the judge later reading in open court the names of the jurors who remained. Id. at 603, 607.

---

[4] In Hundtofte, the use of initials was ordered by the court to remove information that was previously in the record. 181 Wn.2d at 3-4. Here, the party's spontaneously utilized initials without order of the court, and so did not remove information that was previously in the record. Finding no case directly on point, we choose to treat the use of initials as a redaction.

Here, as in Love, information that was temporarily inaccessible to the public was made readily available elsewhere in the record. The victim's name was used at the CrR 3.5 hearing. She testified under her full name and was referred to by her full name throughout trial. As in Love, the goals of transparency that animate article I, section 10 are served here because the public was able to monitor the proceedings and observe the victim testify under her full name in open court.

We hold that the Staples has failed to establish that a closure has occurred.

## II. Judicial Comment on the Evidence

Staples contends that the use of the victim's initials in the to convict instruction constituted a judicial comment on the evidence. The Washington Constitution article IV, section 16 prohibits judges from commenting on matters of fact. A jury instruction constitutes an improper comment on the evidence when it reveals the court's personal evaluation of the credibility, weight, or sufficiency of the evidence presented at trial. See State v. Sivins, 138 Wn. App. 52, 58, 155 P.3d 982 (2007). This court reviews jury instructions de novo within the context of the jury instructions as a whole. State v. Levy, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006).

Staples contends that the use of the victim's initials implied to the jury that the court considered her a victim of sexual assault in need of protection. The first element of the pattern instruction used in this case as the to convict instruction, reads as follows: "That on or about (date) the defendant knowingly caused (name of victim) to have sexual contact with the defendant." 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 49.02, at 1005 (4th ed. 2016).

Staples argues that "(name of victim)" may be replaced only with the victims full name or the term "alleged victim" to avoid judicial comment on the evidence.[5] We disagree.

We have held that the use of a victim's full name in the jury instructions does not constitute a comment on the evidence. See Levy, 156 Wn.2d at 722. We have also found that the use of the term "the victim" does not ordinarily convey to the jury the court's personal opinion on the case. State v. Alger, 31 Wn. App 244, 249, 640 P.2d 44 (1982).[6] We reject Staples argument that the use of initials is a comment on the evidence.

We hold that the jury instruction was not a judicial comment on the evidence.

III.    Due Process Violation

Staples also contends that the use of the victim's initials in the jury instructions undermined the presumption of innocence by identifying her as a victim. As noted above, a juror would likely not presume the victim was a victim simply because of the use of her initials. The jury was also specifically instructed that Staples was presumed innocent, and that the state must prove all elements beyond as reasonable doubt. The instructions, when viewed as a whole, did not lower the burden of proof.

We hold that use of initials did not violate due process.

---

[5] Staples made this argument explicitly for the first time at oral argument.
[6] Our Supreme Court has found no issue with the use of the word "victim" in jury instructions. State v. Mayers, 164 Wn.2d 174, 186-87, 189 P.3d 126 (2008).

IV. Community Custody Conditions

Staples argues that the trial court erred in imposing various community custody conditions upon him. The imposition of community custody conditions are governed by RCW 9.94A.703. RCW 9.94A.703(3)(c) gives the sentencing court discretion to order the offender to participate in crime-related counselling services. RCW 9.9A.703(3)(d) gives the sentencing court discretion to order the offender to participate in rehabilitative programs or perform affirmative conduct reasonably related to the circumstances of the offense, the offender's risk of reoffending, or the safety of the community. We review imposition of community custody conditions for abuse of discretion and will reverse them only if they are manifestly unreasonable. State v. Padilla, 190 Wn.2d 672, 677, 416 P.3d 712 (2018). A sentencing court abuses its discretion when it imposes an unconstitutional condition. Id.

A. Special Condition Number 5

Staples objects to special condition number 5, which requires Staples to

[i]nform the supervising CCO and sexual deviancy provider of any dating relationship. Disclose sex offender status prior to any sexual contact. Sexual contact in a relationship is prohibited until the treatment provider approves of such.

He contends that the condition is not crime related and infringes upon his constitutional rights to free speech and due process.

1. Crime Related

Staples contends that special condition number 5 was not crime related under RCW 9.9A.703(3)(c)-(d). There need be only "some basis" connecting the

community custody condition to the crime. State v. Irwin, 191 Wn. App. 644, 657, 364 P.3d 830 (2015). Staples argues that there is no basis for this condition because the two incidents for which he was sentenced did not involve a domestic partner. Staples's sentencing was for both his 2007 attack on the victim, and a 2015 incident where he had sexual contact with an acquaintance while she was sleeping. This second conviction forms a reasonable basis for special condition number 5 because it shows that Staples's propensity for sex crimes is not limited to strangers. That neither woman was in a dating relationship with Staples does not preclude the trial court from utilizing its discretion to impose this condition.

We find that special condition number 5 is crime related.

2. Free Speech

Staples contends that special condition number 5 violates his free speech rights. He specifically objects to the conditions requiring him to disclose his status as a sex offender status prior to any sexual contact, and to disclose any dating relationship to his CCO and treatment provider. The state generally cannot force an individual to speak against his will. State v. K.H.-H, 185 Wn.2d 745, 749, 374 P.3d 1141 (2016). Speech rights are lessened in the context of prison or probation. Id. Sentencing judges have broad discretion to impose conditions affecting free speech rights if they are reasonably related to permissible purposes. Id. at 750.

Staples claims this condition is overly broad and not reasonably tied to his crime. Staples was convicted of attempting nonconsensual sex on separate occasions with a stranger and an acquaintance. The requirement that he inform his treatment provider of any dating relationship is rationally related to the success

10

of his treatment program. The requirement that he disclose his status as a sex offender prior to engaging in future sexual behavior is rationally related to ensuring his future sexual pursuits are entirely consensual.

We find special condition number 5 does not violate Staples's free speech rights.

### 3. Due Process

Staples also argues that special condition number 5 is an infringement of his rights to privacy and marriage. People are entitled to privacy, including to have consensual sex in their own homes. See generally Lawrence v. Texas, 539 U.S. 558, 123 S. Ct. 2472, 156 L. Ed. 2d 508 (2003). Physical intimacy is recognized as an important part of the marital bond. See Obergefell v. Hodges, 135 S. Ct. 2584, 2599, 192 L. Ed. 2d 609 (2015).

Restrictions on privacy in community custody conditions are justified when reasonably necessary to protect the community. In re Pers. Restraint of Waggy, 111 Wn. App. 511, 517-18, 45 P.3d 1103 (2002). The conditions are justified here because of Staples's criminal sexual conduct towards both strangers and acquaintances. Condition number 5 refers to "dating relationships" and therefore is not applicable to Staples's existing marriage.

We find no due process violation in the community custody conditions.

### B. Special Condition Number 6

Staples contends that the trial court abused its discretion by imposing special condition number 6 because is not crime related and not required by statute. Special condition number 5 requires Staples to "[o]btain prior permission

11

of the supervising CCO before changing work location." This condition is related to the condition that Staples must work at "department approved employment," which is a waivable condition under RCW 9.9A.703(2)(b). Unlike conditions under RCW 9.94A703(3)(c)-(d), this condition does not contain language requiring the condition to be crime related. Compare RCW 9.9A.703(2)(b), with RCW 9.9A.703(3)(c)-(d). The condition is reasonably necessary to help Staples's CCO to know of his whereabouts and movements. Its imposition is not manifestly unreasonable by the trial court.

Staples further contends that the condition is unconstitutionally vague because it invites arbitrary enforcement. A condition is vague if (1) it does not define the offense such that an ordinary person can understand the prohibition; or (2) the condition does not provide sufficiently ascertainable standards to protect against arbitrary enforcement. See State v. Bahl, 164 Wn.2d 739, 752-53, 193 P.3d 678 (2008). The condition here is easy for an ordinary person to understand: prior to changing work location, you must obtain approval from your CCO. The condition does not provide standards for the CCO to utilize in approving a work location change request. But, the vagueness doctrine is concerned with arbitrary enforcement resulting from uncertainty in terms. State v. Smith, 130 Wn. App. 721, 728, 123 P.3d 896 (2005). Here, the terms are clear: whenever a change in work location is sought, the condition is implicated.

We find no abuse of discretion or unconstitutional vagueness in special condition number 6.

V. Statement of Additional Grounds

Staples contends that there was insufficient evidence to convict him at trial. He contends this is so because (1) no knife was recovered from the scene, (2) the victim presented no visible injuries, and (3) the victim's shirt was not ripped. Sufficiency of the evidence is a question of constitutional law that this court reviews de novo. State v. Rich, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). The State is required to prove all elements of the charged offense beyond a reasonable doubt. Apprendi v. New Jersey, 530 U.S. 466, 477, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). The elements the state needed to prove in this case were that Staples knowingly caused the victim to have sexual contact with him by forcible compulsion, and that he was not married to her. Evidence is sufficient to support a conviction if "'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" State v. Green, 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (emphasis omitted) (quoting Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L. Ed. 2d 560 (1979)), overruled on other grounds by Schlup v. Delo, 513 U.S. 928, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995). It is the function of the jury to determine the credibility of witnesses. State v. Holbrook, 66 Wn.2d 278, 279, 401 P.2d 971 (1965). When a defendant challenges the sufficiency of the evidence, they admit the truth of all the state's evidence. State v. Cardenas-Flores, 189 Wn.2d 243, 265, 401 P.3d 19 (2017).

Here, the victim testified to all the elements of the crime. Assuming her testimony was true, a rational juror need not have found any of the shortcomings

that Staples raised to find the elements of the crime proven beyond a reasonable doubt.

We reject Staples' claim of insufficiency of the evidence.

We affirm.

Appelwick, CJ

WE CONCUR:

Smith, J.

Dwyer, J.